## The State v. Evans, Appellant.

1. **Murder**: EVIDENCE: RES GESTÆ. Declarations, to be a part of the *res gestæ*, must have been made at the time the act was done, which they are supposed to characterize; and must be calculated to unfold the quality of the facts they are intended to explain, and so to harmonise with them as, obviously, to constitute one transaction.

   THIS PRINCIPLE APPLIED.—Upon a trial for murder, it was held that declarations of defendant made about an hour before the killing, and entirely disconnected therewith, to the effect that deceased had been following defendant up for a long time to kill him, and that defendant was in fear of his life when he saw deceased, and that defendant was going to leave the county to avoid a difficulty with deceased, are not admissible as part of the *res gestæ*.

2. **Evidence**: WRITTEN STATEMENT OF WITNESS. The written statement of a witness, taken at a former trial, but not preserved or written down by any one authorized by law to do so, nor signed by the witness, cannot be received in evidence when it appears that the witness, though absent when the statement is offered, has been present at an earlier period of the trial, and it does not appear that the process of the court has been invoked, nor that it would have been ineffectual if it had been invoked.

3. **Presumption from Killing**: INSTRUCTION. *Held*, that an instruction that, "if defendant killed deceased by shooting him with a pistol, the law presumes it is murder, in the absence of proof to the contrary," is literally correct; and that, although the presumption under our statute from such a killing is that of murder in the second degree, yet it is a presumption of murder nevertheless; and that the jury could not have mistaken the import of such an instruction, when considered in connection with other instructions that were given, clearly defining murder in the first degree, and pointing out the distinction between it and murder in the second degree.

4. **Murder in the First Degree**: MURDER IN THE SECOND DEGREE. In order to establish the crime of murder in the first degree, the deliberate purpose to take life or to do some great bodily harm must exist, and this must be shown by the evidence, and by the evidence alone; but murder in the second degree may be shown by the killing alone in the absence of any extenuating evidence reducing the offense to some grade of manslaughter, or showing that it was a killing by accident or misfortune or in justifiable self-defense.

5. **Homicide**: THREATS TO KILL. Threats to kill will not justify the person, whose life is threatened, in shooting the person making

the threats, unless it appear from the evidence that, at the time of the shooting, the person, who had made the threats, was making some efforts to carry them out. Such threats, however, when recent and communicated to the knowledge of the person threatened, and causing him to fear that an attack is about to be made upon him with intent to take his life or to do him some great bodily harm, will justify him in acting more promptly and upon less demonstrations of hostility than he would if such fears had not been so aroused; and even to the extent of taking life, if from the nature of the threats and the character of him who makes them, together with his appearance, conduct and demonstrations at the time, the person threatened has reasonable cause to believe that such attack with such intent is about to be made. although the object of the person so threatening is only to frighten him, and there is no real danger.

6. **Practice**: INSTRUCTIONS. Instructions, which are mere repetitions of those which have already been given, are properly refused.

7. **New Trial**: CUMULATIVE EVIDENCE. Newly-discovered evidence, which is merely cumulative in its character, is no cause for a new trial. But this rule might be relaxed in a case where the State should attack or bring in doubt the evidence, which the cumulative evidence would tend to confirm.

*Appeal from Dunklin Circuit Court.*—HON. R. P. OWEN, Judge.

*S. M. Chapman* for appellant.

1st. Without attempting to controvert the doctrine that to make declarations admissable as *res gestœ*, they must be contemporaneous with the main fact, yet it is equally true that to be contemporaneous they need not be precisely concurrent in point of time. If they tend to illustrate the character of the act, and are made at a time so recent as to reasonably preclude the idea of deliberate design, they are admissible, (Starkie's Ev. Sharswood's Ed. 89); *Durant v. People,* 13 Mich. 351; *Marr v. Hill,* 10 Mo. 320; *Wadlow v Perryman,* 27 Mo. 279; *Hanover R. R. Co. v. Coyle,* 55 Pa. St. 396; *Brownell v. Pacific R. R. Co.,* 47 Mo. 244; *Harriman v. Stowe,* 57 Mo. 93; *State v. Sloan,* 47 Mo. 604; *Travelers' Ins. Co. v. Mosley,* 8 Wall, 397;

Bishop Crim. Law (5th ed.) §187–9; Bishop Stat. Crimes, §132.

2nd.   When the circumstances accompanying a homicide are in evidence, the question whether the crime is murder or manslaughter is to be determined from all the facts and circumstances in evidence, and not from any artificial presumption drawn from the mere fact of killing; and where there is reasonable doubt as to whether the offense is murder or manslaughter, the verdict should be for the lower offense. *Maher v. The People*, 10 Mich. 212 ; *Goodall v. State*, 1 Oregon 333; Whart. on Hom. §§ 499, 660, 664; *U. S. v. Mingo*, 2 Curtis C. C. 1; *U. S. v. Armstrong*, 2 Curt. C. C. 446; *Commonwealth v. Hawkins*, 3 Gray 463 ; *State v. Newton*, 4 Nev. 410 ; *Stokes v. The People*, 53 N. Y. 164; *Mitchell v. State*, 5 Yerg. 340; *Davis v. State*, 10 Ga. 101; Whart. on Hom. (2nd ed.) § 194; *Coffee v. The State*, 3 Yerg. 283 ; *Regina v. Maugridge*, Kelyng 122; 4 Bl. Com. 194, 195.

3d.   It was error to instruct the jury upon the law of murder in the second degree, as there was no evidence tending to establish the prisoner guilty of that offense—if guilty of any offense, it was of some other grade of homicide than murder in the second degree. The evidence tends only to prove murder in the first degree together with some of the grades of manslaughter. *People v. Shehan*, 49 Barb. 217 ; *State v. Phillips & Ross*, 24 Mo. 486–490; *State v. Shoultz*, 25 Mo. 153; *State v. Joeckel*, 44 Mo. 235.

4th.   It is sufficient to justify one, whose life has been threatened by another, in defending himself with a pistol, that the danger be reasonably apparent. It is not necessary to the right of such defense that the jury should find that the person who had made the threats was, in fact, making any effort to carry out such threats. Whart. on Hom. 2d ed. §§ 493–499; 1st Bishop crim. law, 5th ed. § 305 ; Wharton criminal law, 7th ed. § 1019; *Campbell v. People*, 16 Ill. 17 ; *State v. Sloan*, 47 Mo. 604; *Logan v.*

*Commonwealth,* 2 Wright (Pa.) 265 ; *State v. Harris,* 1 Jones (N. C.) 190 ; Selfridge's case, 3, 4 ; *Schnier v. People,* 23 Ill. 28 ; *State v. Collins,* 32 Iowa, 36 ; *Young v. Commonwealth,* 6th Bush (Ky.) 312 ; *Pond v. People,* 8 Mich. 150 ; *Patten v. People,* 18 Mich. 314 ; *Carroll v. State,* 23 Ala. 28.

5th. It was the duty of the court to have defined to the jury, all the different degrees of homicide which the testimony tended to prove, that the jury might judge intelligently as to the grade of the crime, if any, to be imputed to the prisoner ; and it was error to confine them, by instructions, to the consideration of murder only, as the evidence clearly tended to prove the lower degrees of manslaughter as well as murder. *Crawford v. State,* 12 Ga. 142 ; *State v. Bryant,* 55 Mo. 79 ; *State v. Matthews,* 20 Mo. 57 ; *State v. Jones,* 61 Mo. 236 ; *State v. Schoenwald,* 31 Mo. 158.

6th. Although the evidence be only cumulative, yet if it be of a character so important as likely to change the verdict, a new trial should not be refused.

7th. The evidence, as contained in the record, does not warrant the finding of the jury. While courts will not lightly disturb the verdict of a jury, even in a criminal case, on a mere question of the weight of evidence, yet when there is no evidence to support the finding, or where it is apparent that the judgment ought not to stand, the court will look into the record to see if the verdict is warranted by the facts proven, and, where it is not, will award a new trial. *Mansfield v. State,* 41 Mo. 470 ; *State v. Burnside,* 37 Mo. 346 ; *State v. Packwood,* 26 Mo. 364 ; *State v. Bird,* 1 Mo. 585 ; *Davis v. State,* 2 Humph. 439.

*J. L. Smith,* Attorney-General, for the State.

1st. Statements by a defendant as to the condition of his mind just before committing a crime are inadmissible in his favor ; *Green v. State,* 13 Mo. 382 ; nor are they part of the *res gestæ* ; *State v. Ware,* 62 Mo. 598.

2nd.   The minutes of the testimony of one Baker, taken on a former trial, were not signed by the witness, nor sworn to by him, and were simply hearsay testimony and inadmissible.   *Chouteau v. Searcy*, 8 Mo. 733.

3d.   If the defendant killed the deceased, the law presumes it to be murder, in the absence of proof to the contrary.   *State v. Underwood*, 57 Mo. 40.

4th.   The instruction given on the part of defendant, presented the law of justifiable homicide in a light most favorable to defendant, and there is no error in refusing those refused.   *State v. Harris*, 59 Mo. 550 ; *State v. Sloan*, 47 Mo. 604; *State v. O'Connor*, 31 Mo. 389 ; *State v. Hicks*, 27 Mo. 588 ; *State v. Philips*, 24 Mo. 475.   '

5th.   The granting of a new trial, on the ground of newly-discovered evidence, rests in the sound discretion of the court trying the case.   *M. & M. Insurance Co. v. Curran*, 45 Mo. 142.

NORTON, J.—Defendant was indicted in the circuit court of Dunklin county for murder in the first degree, for the killing of one William R. Rankins, by shooting him with a pistol.  He was put upon his trial at the May term, 1876, of said court, and found guilty of murder in the second degree, and his punishment fixed at ten years imprisonment.  The alleged errors which we are asked to review, are the action of the court in giving and refusing instructions, the admission and rejection of evidence, and in overruling a motion for a new trial.

On the trial, defendant offered to show by Rice, a witness, that, about one hour before the killing, when Rankins 1. MURDER: evi- passed the wagon in which defendant and dence; *res gestæ.*  witness were riding, defendant stated to witness that " Rankins had been following him up for a long time to kill him; that he was in fear of his life when he saw Rankins."   This witness was also asked if he knew of defendant's going to mill that day, with reference to leaving the county; and he was also asked if he had heard

defendant say, on that day after Rankins passed, and within an hour of the difficulty, that he was going to leave the country to avoid a difficulty with Rankins?" The evidence sought of this witness, we think, was inadmissible, not being a part of the *res gestæ*. Rankins, so far as the evidence shows, passed the wagon in which defendant and witness were riding, no words having been spoken either by defendant, Rankins or the witness. These declarations, if made by defendant, were entirely disconnected from the shooting of Rankins; they constituted no part of the *res gestæ* and were not made contemporaneously with the killing, which occurred about an hour after the remarks are alleged to have been made. A party cannot be allowed to give his own declarations in his favor, and thus manu-facture evidence for himself. Declarations, to be a part of the *res gestæ*, must have been made at the time the act was done, which they are supposed to characterize, and calculated to unfold the quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction. Starkie Ev. 88; *Green v. State*, 13 Mo. 382.

It is urged that the court erred in not permitting the written statement of one Baker, which had been taken at a 2. EVIDENCE: written statement of witnesses. former trial, to be read as evidence. It appears that Baker had been in court till after the close of the evidence on the part of the State. We can perceive no principle on which this evidence should have been received. So far as it appears from the record, it was not preserved or written down by any one authorized by law so to do, nor was it signed by the witness. It does, however, appear that Baker was present at the trial till after the State closed its case, and, although it is stated that he was absent when the written statement was offered in evidence, it does not appear that the process of the court was invoked to compel his attendance, nor that it would have been ineffectual if it had been invoked.

It is insisted that the court erred in giving instructions

numbered two, three, four and five. In number two the court told the jury that "if defendant killed deceased by shooting him with a pistol, the law presumes it is murder, in the absence of proof to the contrary." In the case of the *State v. Hayes*, 23 Mo. 320–3, a similar instruction to the above was directly passed upon and affirmed. In that case the jury were told that if Hayes killed deceased with a spade, the law presumed it was murder, in the absence of proof to the contrary. In reviewing the instruction, the court observes " that it is literally correct, nor can we see how the jury could be misled by it. If Hayes killed deceased with a spade, the law presumes it is murder, in the absence of proof to the contrary, and it devolves on defendant to show from the evidence in the case, to the reasonable satisfaction of the jury, that he was guilty of a less crime, or acted in self-defense. The court did not fix the degree of murder; it did not say murder in the first or second degree." It was urged in that case, as it is in this, that, as murder in the first degree had been mentioned by the court, by saying murder, without mentioning any degree, the jury would believe the court meant murder in the first degree; but this is a *non sequitur*. The presumption under our statue from such a killing would be murder in the second degree. Yet it is, nevertheless, murder. When the second instruction is considered with the first and third, we do not think the jury could have mistaken the import of it. In the first instruction the offense of murder in the first degree was clearly defined, and the jury were told that if defendant in malice did willfully kill deceased with a pistol, and if he thought of the killing before hand any length of time, however short, the offense was murder in the first degree.

*3. PRESUMPTION FROM KILLING: instruction.*

The court, in its third instruction, substantially told the jury that in murder of the first degree the law requires that the deliberate purpose to take life or do some great bodily harm should exist, and that this should be shown by the evidence, and

*5. MURDER IN THE FIRST DEGREE: murder in the second degree.*

the evidence alone; while murder in the second degree may be made to appear from the killing alone, the defendant failing to explain by evidence that it was done in a less criminal manner, and that if defendant did deliberately and purposely kill the deceased, they should find him guilty of murder in the first degree. But if they were not satisfied from the evidence that defendant did thus deliberately and purposely kill the deceased, then in the absence of any extenuating evidence reducing the offense to some grade of manslaughter, or of its being a killing by accident or misfortune, or in justifiable self-defense, the jury will find defendant guilty of murder in the second degree. This instruction is objected to on the ground that it does not correctly declare the law as to murder in the second degree, and that the evidence showed the offense to be either murder in the first degree or manslaughter in some of its degrees, or justifiable homicide. The questions involved in the above objections have been considered by this court at the last term, in the case of the *State v. Lane*, 64 Mo. 319, and, according to the views therein expressed, the objections of defendant to the instruction given were properly overruled. *State v. Starr*, 38 Mo. 270; *State v. Underwood*, 57 Mo. 49; *State v. Foster*, 61 Mo. 549; *State v. Holme*, 54 Mo. 153; *State v. Hudson*, 59 Mo. 137.

In the fifth instruction the court told the jury that, if they believed from the evidence, " that at the time of the

5. HOMICIDE; threats to kill.

shooting, the deceased, Rankins, had made threats in regard to the defendant, yet, unless it appeared from the evidence, at the time of the shooting of said Rankins by defendant, that he was making some efforts or attempts to carry out such threats, then the defendant was not justifiable in shooting said Rankins." This instruction imports nothing more than a declaration to the jury that, if deceased had made threats against the defendant, but at the time of shooting of deceased by defendant, he was unoffending, the fact of threats having been made would not justify defendant in shooting him.

This instruction, in connection with the four instructions given by the court on behalf of the defendant, could not have misled the jury; for, in the third instruction, the jury were instructed that, if they believed from the evidence, that Rankins had shortly before the homicide threatened to take the life of defendant, and that he had been informed of the threats so made; that, if from the nature of the threats and the character of the man who made them, together with his appearance, conduct and demonstrations at the time of the shooting, the defendant had reasonable cause to believe that deceased was about to attack him with the intent to take his life, or do him great bodily harm, then Evans was j stifiable in acting more promptly and upon less demonstrations of hostility, than though his fears had not been aroused by deceased's prior threats and conduct, and if the jury believe that the conduct and prior threats of Rankins were such as to lead a reasonable man to believe, at the time of the shooting, that Rankins was about to kill him, or do him some great bodily injury, then the jury ought to acquit, although they may also believe that Rankins' only object was to frighten defendant, and that he was in no real danger. This instruction, with the first and fourth, which were given, placed the law of self-defense in the strongest possible light for the defendant, and also the law as to reasonable doubt.

The court properly refused instructions five, six, seven, eight and nine asked by defendant because they were mere 6. PRACTICE: In- repetitions of what had already been given, structions. and the instructions which the court gave in defendant's behalf fully and fairly declared the law of justifiable homicide, as it has repeatedly been determined by the court. It is insisted that the motion for new trial should have been sustained because the evidence did not justify the finding, and because of the discovery of new evidence. A large number of witnesses testified on the trial that deceased had, for a considerable time

previous ad dow n to within a short time of the killing, repeatedly threatened to kill defendant ; that on the day Rankins was killed he passed defendant and one Rice in a public road,who were driving a wagon; that deceased was on horseback, and, after having gone a considerable distance, returned between a half an hour and an hour afterwards, to the wagon where defendant was. About the time of his return, the teamster of another wagon requested them to let him pass. Rankins thereupon rode to the head of the horses in Rice's wagon in the direction of defendant. Three or four witnesses, who saw the difficulty, state that about the time Rankins got to the head of the horses, defendant shot at deceased with a large navy pistol, and that deceased then attempted to draw his pistol, when defendant fired the second shot and Rankins fell from his horse and expired with his pistol on his breast. That after or about the time of the first fire defendant said, "if that is your game (or aim) G——d d——n you, light in to me." These were the only words spoken by the parties at the time, and the witnesses state that deceased did not have a pistol in his hand nor make any attempt, that they saw, to draw one till after the first shot. One witness stated that as deceased rode around the wagon he had his pistol in his hand, and another witness stated that he had his hand on his hip or in his pocket before defendant shot. There was evidence tending to show that deceased was a turbulent man when drinking. The jury may well have reached the conclusion that they did, and there is nothing in the evidence which authorizes us to disturb the finding.

The newly discovered evidence set out in the motion is altogether cumulative in its character, and would only have 7. NEW TRIAL: Cu- established what had already been clearly m u l a t i v e evi-
dence. proven by a large number of witnesses, viz : that deceased had on very many occasions threatened to kill defendant, some of them extending the threats down to the day of the killing. The evidence of these witnesses was undisputed, and no attempt was made to assail or im-

peach it on the part of the State. If the State had attacked this evidence or sought to discredit the witnesses who swore to these threats, and thus brought the question in doubt, the motion would have been entitled to consideration by the court, and, in such a case, it might have been justified in relaxing the rule that newly discovered evidence which is merely cumulative is no cause for a new trial. We cannot perceive that the court committed error in overruling the motion on either of the grounds assigned. Looking at the whole record in this case we have been unable to discover any reason for disturbing the judgment, and it will therefore be affirmed. Judgment affirmed, in which the other judges concur.

AFFIRMED.